## Oglesby v. Prudential Insurance Co. of America.

(Decided April 26, 1935.)

DAYTON T. MITCHELL for appellant.

JOSEPH W. FOWLER, Jr., for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On June 7, 1929, the appellant and defendant below, C. M. Oglesby, borrowed from the appellee and plaintiff below, Prudential Insurance Company of America, the sum of $11,000, for which he executed his note and secured it by a mortgage on some real property in Louisville, Ky., consisting of a double apartment house. Under the borrowing agreement, which was incorporated in the note and mortgage, defendant agreed to pay the interest on the principal sum borrowed semiannually beginning on the date of the loan, June 7, 1929; but he was not to pay any part of the principal until June 7, 1932, when he agreed to pay a semiannual payment of $275 and a similar amount each six months thereafter until June 19, 1939, when the balance of the principal would become due and payable. Defendant later borrowed $800 from the Liberty Fire Insurance Company and secured it by a second mortgage on the same property. Before the first installment payment on the principal became due, he defaulted in the interest payments, thereby creating the right in plaintiff to precipitate the payment of the entire debt and to proceed to collect it and to enforce its lien against the mortgaged property; but, instead of pursuing that course at that time, defendant agreed to turn the property over to the Franklin Title & Trust Company, a real estate corporation in Louisville, and to have it look after and manage the property and keep it in repair and to apply the net rents to defendant's indebtedness to plaintiff, which then exceeded the principal of the debt because of defaults in payment of interest and defaults in the payment of taxes and insurance and other items that defendant agreed to pay; but, if not paid by him, then to be paid by plaintiff, which it had done pursuant to such understanding.

Defendant on October 3, 1931, wrote and signed this authority to the Franklin Title & Trust Company: "You are hereby authorized to collect the rents accruing on my properties at 2710-12-14 Shippen Road and 126 North Longworth Avenue, upon which the Prudential Insurance Company have loans, and apply the same payments on said loan, taxes, insurance or any other legal assessments which may become due and also make necessary repairs and further to apply any surplus to the loan of the Liberty Fire Insurance Company. You are further authorized to pay to your Agent 5% of any amount so collected, as compensation for his services.

This assignment shall in no wise prevent you from instituting a foreclosure lien of the Prudential Insurance Company on said properties, should such action be authorized by them.''

Instead of personally discharging the duties therein conferred, it delegated the right to do so to three other corporations engaged in a similar business covering different periods of time, but the net proceeds from the property so realized were insufficient to meet the payments demanded by the terms of the loan, and on August 19, 1932, 9 months and 16 days from the date of the appointment of the Franklin Title and Trust Company as agent, plaintiff, under the right of precipitation given it, filed this equity action in the Jefferson circuit court, setting out the various amounts constituting its total indebtedness under the terms of the loan, which aggregated $13,216.27. The petition set out in detail each item composing the aggregated sum, and its authority for the charges so made, but it did not expressly state their total amount, although its prayer asked for the enforcement of the lien for each of the items.

The first paragraph of the original answer denied plaintiff's right to precipitate the due date of the debt under the terms of the loan, but did not state the reasons why. However, the second paragraph thereof attempted to state such reasons, and which were, that the Franklin Title & Trust Company, to whom defendant had turned over the property for management, had violated its duties in the premises by reducing the rent, extravagant expenditures, and other defalcations, whereby the net proceeds of the property were reduced to a point where it did not meet defendant's obligations as they became due, and but for which there would have been none, and no ground for the precipitation of the payment of the debt. In that paragraph he also averred that the agent, or mutually agreed receiver to whom he had turned over the property, was the exclusive agent of plaintiff, although its authority was expressly conferred by the writing, supra, executed exclusively by defendant. That answer was controverted by reply, and the cause was referred to the master commissioner, without objections, and with authority for him to take proof upon the matters stated in the second paragraph of the answer. While the record was in that condition, defendant filed an amended answer and cross-petition,

as he designated it, and in it he set out the three other corporations whom the Franklin Title & Trust Company designated to look after and manage the property and made his pleading a cross-petition against each of them, charging them with the same derelictions that he had previously preferred against the Franklin Title & Trust Company, and asked that each of them render an accounting.

They each answered and filed a statement of their respective accounts, but the aggregate of all of them was not sufficient to meet the obligations of defendant so as to prevent the precipitating right authorizing plaintiff to file the action. Various demurrers, motions to strike, and counterpleadings were filed, including time given by defendant to take and present his proof, but which he never did, and on July 1, 1933, defendant, by and through his third attorney employed by him since the beginning of the litigation, filed his second amended answer and counterclaim, as he styled it, in which he reiterates the matters contained in his two former defensive pleadings, and seeks to charge plaintiff with the alleged defalcations of the agents who looked after the property for about 9½ months after the Franklin Title & Trust Company was appointed agent, and he further alleged in one of its paragraphs that such mismanagement and defalcations as above referred to had slandered the standing of the property in the community where it was located, and thereby damaged and reduced its value to the extent of $10,000, for which sum, with the other items enumerated because of such defalcations, he sought credit on his indebtedness. At the time of filing that pleading, defendant's given time to take his proof had about expired, but he had taken none, and on July 28, 1933, his third employed counsel, who filed his third answer, moved a transfer of the issues to the common pleas branch of the Jefferson circuit court "for the trial of the issues raised by defendant's pleadings"; they having been denied by plaintiff and by the cross-defendants.

On August 4 thereafter the cause was submitted and the court heard oral evidence on the issues raised by defendant's pleadings; one of the witnesses who voluntarily testified being defendant himself. That testimony was transcribed and made a part of the record, and from it we are thoroughly convinced that the de-

fenses so interposed are wholly unfounded—so much so as to closely approach, if not completely reach, the classification of sham pleas. The testimony so taken shows that the rent was, at least as to some of the tenants, reduced, but it also shows that it was absolutely necessary to do so under the prevailing financial distressful conditions in order for the property to be occupied at all. The testimony also showed that the expenditures made for improvements were absolutely necessary to the preservation of the property in a rentable condition, and that like property situated in the same community was similarly affected. After hearing that evidence, the court rendered judgment declaring plaintiff a first lien on the property for "amounts prayed for in the petition, with interest thereon to the date of sale," and that the Liberty Fire Insurance Company had a second lien for its debt. No personal judgment was rendered against defendant.

The master commissioner was ordered to sell the property on credits for designated periods, and for the sale to be duly advertised and the property appraised before making it, and other requirements of the law with reference to such sales were prescribed. The property was appraised at $10,500, and at the sale thereafter plaintiff's bid of $7,000 was accepted. A report thereof was made by the master commissioner, and defendant then made a motion to set aside the order of sale on the ground that it did not designate the amount to be realized and which was based on the idea that the judgment should have designated (in express terms) the aggregate amount of the items constituting the entire indebtedness, notwithstanding the petition and prayer thereof did accurately describe each item and the amount thereof. So that defendant's only ground for setting aside the judgment was based on a failure of the court to add those items and to then state in the judgment their aggregate sum, and from which it will plainly appear that the court properly overruled that motion as based upon the only ground urged in support of it.

The strictly technical and proper course would have been for the court to have stated the aggregate amount of plaintiff's indebtedness, but, since the pleadings showed the items composing it, such aggregate amount could be obtained by a mere process of addition, and the rule is that, "that is certain which may be made cer-

tain." Black on Judgments, vol. 1, sec. 118, p. 169; Four Mile Land & Coal Co. v. Slusher, 107 Ky. 664, 55 S. W. 555, 21 Ky. Law Rep. 1427; and Latham v. Lindsay, 130 Ky. 669, 673, 113 S. W. 878. Other cases and authorities could be cited to the same effect, and which is, that the pleadings in the cause may be looked to in aid of the judgment, and that the certainty of the latter may be obtained from consulting preceding parts of the record containing the necessary data therefor.

After filing the report of sale by the master commissioner defendant filed exceptions thereto containing eight alleged grounds therefor, three of which were: (a) Inadequacy of the accepted bid; (b) because the aggregate amount to be realized by the sale in favor of plaintiff was not stated in the judgment; and (c) there was no market for such property at the time of the sale and because of which only one bid was made for it, which was that of plaintiff, and which the commissioner accepted, it being more than two-thirds of the appraised value of the property. The other five alleged grounds are too trivial to require consideration or discussion by us.

We have too often held that mere inadequacy of consideration, if the bid was otherwise competent, will not authorize a decretal sale to be set aside, to require a citation of the cases to that effect. If the inadequacy of the bid is attended with other considerations rendering the sale inequitable and unjust, a motion to set it aside will most generally prevail, but no such additional considerations were made to appear in this case, nor was there any proof taken showing the inadequacy of plaintiff's bid, and under the circumstances ground (a) is unavailable. We have already disposed of ground (b) in considering the sufficiency of the judgment.

In support of ground (c), counsel for defendant indulges in a discussion of present economic conditions which he contends authorize courts to set aside the constitutionally established rules of practice for the benefit of debtors, and in which he urges, in substance, that the courts, when resorted to for the collection of debts and the enforcement of liens to secure them, should decline to make any orders whereby the debtor might sustain loss because of reduced valuations as a result of financial disturbances and depressions; but which course we

declined to adopt in the recent case of Kentucky Joint Land Bank v. Fitzpatrick, 237 Ky. 624, 36 S. W. (2d) 25, in which we held, in substance, that the conditions relied on would not authorize a court in departing from mandatory requirements of the law as prescribed by constitutionally enacted statutes. The only way that defendant's counsel attempts to avoid the effect of that opinion is a declaration that it is erroneous and should be overruled.

However, in the recent case of Federal Land Bank of Louisville, Kentucky, v. Crombie, — Ky. — , 80 S. W. (2d) 39 (decided March 15, 1935), we expressly approved the principles announced in the Fitzpatrick opinion and in which we fortified the conclusions reached therein with the citation of authorities not contained in that opinion. In each of those cases the opinion was confined to a declination of approving the right of a court to set aside statutory enacted and prescribed rules of practice or to pursue a course directly contrary thereto. We had no occasion to discuss, nor did we attempt to define, in either of those opinions the inherent power of courts unaffected by such prescribed rules. The enthusiasm of counsel for defendant leads him to a declaration that, in ordering the sale in this case, the court violated the provisions of section 375 of the Civil Code of Practice, saying: "Foreclosure of a mortgage is forbidden"; it, of course being argued by him that the judgment appealed from was and is one of foreclosure under the common-law practice in the enforcement of liens; but which is glaringly erroneous, since it is but the usual and ordinary one for a sale of the property to enforce a lien against it, in strict conformity with our prevailing rules of practice for the purpose. We conclude, therefore, that none of the grounds urged in support of the motion to set aside the sale are available for that purpose.

But it is argued (and perhaps this is the only one approaching merit) that the judgment was premature, in that the submission should have been postponed until it was ascertained by the verdict of a jury the amount, if any, that might be due plaintiff under his alleged counterclaim which we have hereinbefore stated. While the argument is made as one of the grounds for reversing the judgment, no objection based upon it was made in the trial court, except the motion to set aside the

judgment which was based upon an entirely different ground, and which we have hereinbefore declared to be insufficient. The submission was made without objection; testimony was taken and heard without objection, and during the taking of which defendant had the right, so far as this record shows, to introduce whomsoever he pleased, and, as we have seen, he did testify in his own behalf. The investigation developed no substantial defense, and for which reasons we are unable to see wherein defendant's rights were prejudiced in ordering the sale of the property without first submitting the issues presented by him in his answer as amended to a jury for trial, even if such defenses are available to defendant, but concerning which we entertain grave doubts.

In the first place, the complaints made by him emanate from alleged derelictions of what we construe to be his own agent appointed by him to collect and manage the involved property, although plaintiff may have consented thereto or may have recommended the appointee. In the second place, no objection, as we have seen, was made to the order of submission when entered, and the only motion involving any criticism of the judgment was the one made to set it aside, but which was based upon a specific and single inadequate ground—to all of which might be added the apparent sham nature of the alleged defenses. It should also be remembered that the defensive matters do not constitute a counterclaim, as universally defined by this and other courts, but, if available at all, they are only so as a set-off consisting of unliquidated damages. In any event, it is perfectly apparent that the defensive matters complained of, covering a period of a little more than 9 months, could not and did not destroy the value of defendant's property to the extent he claims, and that, when they are tried under the preserved right to do so, the recovery will necessarily be small, if any amount whatever, so as to leave the major part of the indebtedness sued on a lien upon the property, which is indivisible; for which reason we conclude that the court did not err in rendering the judgment nor in overruling the motion to set it aside, and the same is true as to the order overruling the motion to set aside the sale.

Wherefore, for the reasons stated, the judgment is affirmed.