Stanley M. CHESLEY, Appellant

v.

Mildred ABBOTT, et al., Appellees

NO. 2014–CA–001725–MR, NO. 2014–CA–001900–MR, NO. 2014–CA–001984–MR

Court of Appeals of Kentucky.

MARCH 10, 2017; 10:00 A.M.

Discretionary Review Denied by Supreme Court August 16, 2017

BRIEFS FOR APPELLANT: Sheryl G. Snyder, Louisville, Kentucky, Frank V. Benton, IV, Newport, Kentucky

ORAL ARGUMENT FOR APPELLANT: Sheryl G. Snyder, Louisville, Kentucky

BRIEF AND ORAL ARGUMENT FOR APPELLEES: Angela M. Ford, Lexington, Kentucky

BEFORE: ACREE, COMBS AND JONES, JUDGES.

## OPINION

ACREE, JUDGE:

Stanley Chesley appeals the Boone Circuit Court's October 22, 2014 summary judgment in favor of Appellees on their breach of fiduciary duty claims arising from his involvement with the 1998 "Fen–Phen" litigation and settlement.[1] The judgment additionally holds Chesley jointly and severally liable with his co-defendants, William J. Gallion, Shirley Cunningham, and Melbourne Mills, who were previously held liable to Appellees, for $42,000,000.00 in compensatory damages. We affirm.

### I. Factual and Procedural Background

This appeal relates to the conduct of Stanley Chesley and his role in the settlement of *Darla S. Guard, et al. v. American Home Products, Inc.* (the *Guard* case),[2] commenced in 1998 to prosecute the claims of individuals injured after ingesting the diet drug known as "Fen–Phen."

The manufacturers of the drug agreed to a settlement in gross of $200,450,000.00.

However, the plaintiffs received only $73,296,864.96. Approximately $20,500,000.00 was diverted to fund a sham non-profit organization created by the attorneys involved in the litigation. The attorneys divided the balance of the settlement proceeds, amounting to roughly $106,000,000.00. However, the agreement to engage the attorneys limited the contingency fee to $60,798,783.14. Chesley's share of the fee should have been about $12,767,744.45. In fact, Chesley received a total of $20,497,121.87.

The former Plaintiffs in the *Guard* case brought a new action claiming breach of fiduciary duty against their former attorneys, Gallion, Cunningham, Mills, and Chesley. More specifically, those former plaintiffs—Appellees here—alleged the attorneys had wrongfully retained more of their client's settlement funds than that to which they were entitled or improperly disbursed a portion of the settlement funds.

Appellees moved for summary judgment on their breach of fiduciary duty claims against all four attorneys in 2007. The circuit court granted the motion as against Gallion, Cunningham, and Mills, but denied the motion as to Chesley, finding there were still genuine issues of material fact regarding his liability.

The summary judgment against Gallion, Cunningham, and Mills was joint and several. It included an award to Appellees of "baseline" compensatory damages equaling $42,000,000.00, plus interest at 8%.[3] The Kentucky Supreme Court affirmed the judgments against Gallion, Cunningham,

---

1. Chesley also appeals the original September 19, 2014 order granting summary judgment which the October 22, 2014 judgment amended, and the November 24, 2014 order denying relief Chesley requested pursuant to Kentucky Rule of Civil Procedure 60.02.

2. Boone Circuit Court, Civil Action Number 98–CI–00795.

3. The court determined that the attorneys wrongfully withheld from Appellees a total of $64,280,497.00. It then rounded the figures to benefit Appellees and subtracted

and Mills in *Abbott v. Chesley*, 413 S.W.3d 589 (Ky. 2013) (*"Chesley I"*). The Court declined to consider the appeal relating to Chesley because of the interlocutory nature of the denial of summary judgment as to him. *Id.* at 602. Notwithstanding that ruling, the Court pointed out that Chesley's relationship with the clients and his role in the enterprise appeared to differ from that of the other three attorneys, and then stated: "[w]hether the differences prove to be material is a matter that can only be determined as the case against him proceeds in the trial court." *Id.* at 605.

While *Chesley I* was pending before the Supreme Court, the Kentucky Bar Association (KBA) investigated claims of professional misconduct against all the attorneys involved.[4] On December 4, 2006, the KBA Inquiry Commission issued its Complaint of Misconduct against Chesley alleging violations of eight Rules of Professional Conduct. In 2009, an additional violation was alleged. After an extensive hearing including the testimony of some 43 witnesses and the submission and review of over one hundred exhibits, the Trial Commissioner issued a report finding that Chesley had violated all nine ethics rules alleged. In light of the number and severity of the violations, the Trial Commissioner recom-

mended Chesley be permanently disbarred from the practice of law in Kentucky. Additionally, the Trial Commissioner recommended that Chesley pay $7,555,000.00 in restitution to the *Guard* case clients.

The Board of Governors then heard argument and reviewed the matter. The Board adopted the Trial Commissioner's report and his recommendations by a vote of eighteen to zero. Chesley sought review by the Kentucky Supreme Court.

The Supreme Court found Chesley guilty of eight of the alleged violations and permanently disbarred him from the practice of law in the Commonwealth of Kentucky. The Court declined to order Chesley to pay restitution, "as that remedy is not appropriate in a case of permanent disbarment, and the claims are being litigated in a separate, civil litigation." *Kentucky Bar Ass'n v. Chesley*, 393 S.W.3d 584, 586 (Ky. 2013) (*"Chesley II"*).

Subsequent to the order disbarring Chesley from the practice of law in Kentucky, Appellees filed a motion for summary judgment in Boone Circuit Court. The motion argued that summary judgment was appropriate as to their breach of fiduciary duty claims against Chesley through the doctrine of collateral estoppel, also known as issue preclusion.[5] Appellees

---

$20,500,000.00 used to fund the non-profit to arrive at the $42,000,000.00 figure. The court also deducted another $1,500,000.00, which Mills claimed as legitimate expenses associated with the litigation and settlement. The Supreme Court later determined that inclusion of the $1,500,000.00 in the damage calculation was error. *Abbott v. Chesley*, 413 S.W.3d 589, 608 (Ky. 2013). The circuit court also determined that Appellees were entitled to a judgment imposing a constructive trust on the monies used to fund the non-profit organization.

4. Cunningham, Gallion, and Mills were permanently disbarred from the practice of law in the Commonwealth. *See Cunningham v. Kentucky Bar Ass'n*, 266 S.W.3d 808 (Ky. 2008); *Gallion v. Kentucky Bar Ass'n*, 266

S.W.3d 802 (Ky. 2008); *Kentucky Bar Ass'n v. Mills*, 318 S.W.3d 89 (Ky. 2010). An associate of Gallion and the judge who presided over the *Guard* action were also disbarred due to their conduct relating to the case. *See Kentucky Bar Ass'n v. Helmers*, 353 S.W.3d 599 (Ky. 2011) and *Kentucky Bar Ass'n v. Bamberger*, 354 S.W.3d 576 (Ky. 2011).

5. For clarity's sake, we adopt the Supreme Court's approach to the use of these terms: "In this opinion we employ the term claim preclusion to refer to the doctrine which bars subsequent litigation of a cause of action which has previously been adjudicated. The term issue preclusion is employed to refer to the doctrine which prohibits issues which were adjudicated in a previous lawsuit from

asserted that Chesley was bound by the Court's findings and conclusions in *Chesley II* regarding his role and the scope of his duties in the *Guard* case. Additionally, Appellees insisted that Chesley be held jointly and severally liable with Gallion, Cunningham, and Mills for the amount judgment against them of approximately $42,000,000.00. Appellees further sought disgorgement of all fees Chesley had collected in the matter.

The circuit court determined that Chesley was bound by the factual findings and legal conclusions in the KBA disciplinary matter, *Chesley II*. Based on the Supreme Court's findings, the circuit court determined that no genuine issue of material fact remained, and therefore, summary judgment was appropriate on the breach of the fiduciary duty claim. The court noted that *Chesley II* established that Chesley had entered into an attorney-client relationship with the plaintiffs in *Guard*; he breached his duty by accepting fees in excess of the amount he was entitled to receive; and Chesley's conduct caused Appellees to receive only a portion of the settlement funds to which they were entitled.

Further, the circuit court found that no genuine issue of material fact remained and, as a matter of law, held Chesley jointly and severally liable with Gallion, Cunningham, and Mills for the $42,000,000.00 in damages previously awarded to Appellees. The circuit court determined Chesley signed on as co-counsel in the *Guard* matter when he contracted with Gallion, Cunningham, and Mills; the attorneys had agreed as to how the work would be borne and how they would share the profits. The circuit court further

found Chesley "maintained a voice in the managerial control of the enterprise." (R. 6172). The court denied the motion as to the disgorgement claim. The initial order granting Appellees' summary judgment, entered August 1, 2014, did not include the finality recitations required by Kentucky Rule of Civil Procedure (CR) 54.02. That order was amended on September 19, 2014, and again on October 22, 2014. The October 22, 2014 order is the judgment, as amended, from which this appeal was taken. The final judgment contains the finality recitations, incorporates previous orders, and adds an award of pre- and post-judgment interest. (R. 6166).

Chesley then filed a motion to clarify with respect to the identification of plaintiffs and the amount awarded to each plaintiff. He also filed a motion pursuant to CR 60.02 to vacate the judgment. The court denied Chesley's motions.

We must note here that, during post-judgment discovery, Chesley disclosed that he had transferred certain of his assets to an Ohio trust. *Chesley v. Abbott*, 503 S.W.3d 148, 151 (Ky. 2016) ("*Chesley III*"). On June 23, 2015, the circuit court entered an order requiring Chesley to transfer his beneficial interest in his Ohio trust to the Appellees to satisfy the $42 million judgment. We will discuss the relevance of this post-judgment order in our analysis.

Chesley brought the three appeals now before us to challenge the judgments of September and October 2014, and the November 2014 order denying CR 60.02 relief. Additional facts will be discussed as necessary.

---

being relitigated in a subsequent lawsuit. *Res judicata* is the Latin term which encompasses both issue and claim preclusion and is not to be used as synonymous with either individually, but rather equally with both. Collateral estoppel is a term used by some to refer to issue preclusion, but for simplicity's sake, we shall not use it in this opinion." *Yeoman v. Commonwealth, Health Policy Bd.*, 983 S.W.2d 459, 465 n.2 (Ky. 1998).

## II. Standard of Review

"The standard of review on appeal of summary judgment is whether the trial court correctly found there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Carter v. Smith*, 366 S.W.3d 414, 419 (Ky. 2012). "The record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). Our review is *de novo. Mitchell v. University of Kentucky*, 366 S.W.3d 895, 898 (Ky. 2012).

Before the trial court, "[t]he moving party bears the initial burden of showing that no genuine issue of material fact exists, and then the burden shifts to the party opposing summary judgment to present" evidence establishing a triable issue of material fact. *Lewis v. B. & R. Corp.*, 56 S.W.3d 432, 436 (Ky. App. 2001). That is, "[t]he party opposing a properly presented summary judgment motion cannot defeat it without presenting at least some affirmative evidence showing the existence of a genuine issue of material fact for trial." *City of Florence, Kentucky v. Chipman*, 38 S.W.3d 387, 390 (Ky. 2001).

▮ Whether a circuit court ruling constitutes a final decision or judgment is a question of law. *See First Nat. Bank of Mayfield v. Gardner*, 330 S.W.2d 409, 411 (Ky. 1959).

## III. Analysis

### *Finality of the Judgment* [6]

In its Second Amended Judgment entered October 22, 2014, the circuit court found Chesley liable for breaching his fiduciary duty, determined the amount of com-

---

**6.** By filing a notice of appeal, Chesley asked the Court of Appeals to exercise its appellate jurisdiction to review the judgment. Denom-

pensatory damages, and included finality recitations from CR 54.02. Nevertheless, Chesley insists the judgment remains interlocutory and non-appealable. He argues that reservation of the question of punitive damages means that the judgment did not resolve a whole claim and, therefore, does not constitute a judgment that could be made final under CR 54.02. We disagree. Furthermore, the Kentucky Supreme Court disagrees, or so it seems. *Chesley III.*

In a case distinct from the instant action, Chesley petitioned the Supreme Court pursuant to CR 65.09 to vacate or modify an order by which this Court denied him relief pursuant to CR 65.07 from the circuit court's order, entered on June 23, 2015. That order, entered subsequent to the judgment under review in this case, "require[ed] Chesley to transfer his beneficial interest in his Ohio trust to the Respondents to satisfy the $42 million judgment." *Chesley III*, 503 S.W.3d at 152. Chesley denominated this order a "mandatory injunction."

Reviewing Chesley's motion, this Court noted the order "is not subject to review under CR 65.07 if the circuit[ court]'s decision was not a temporary injunction." *Chesley v. Abbott*, 2015–CA–001066–I (Ky. App. Oct. 7, 2015) (order denying interlocutory relief). We then held "that the order, when analyzed under CR 65.04(1), is not an injunction, temporary or otherwise, and not capable of being subject to interlocutory relief." *Id.* In so holding, we referred to the October 22, 2014 order granting partial summary judgment as a final judgment.

Analyzing Chesley's CR 65.09 motion, the Supreme Court indicated that the order is a final and appealable order. It said:

inating this as a "protective appeal," he also challenges that same appellate jurisdiction.

On August 1, 2014, the circuit court granted summary judgment against Chesley for Respondents' breach of fiduciary duty claims. In the final amended version of the order, entered October 22, 2014, Chesley was also held to be jointly and severally liable with Cunningham, Gallion, and Mills for the existing judgment amount of $42 million. Additionally, the October 22, 2014, order expressly noted that it was a final and appealable order.

. . . . .

While all the claims against Chesley have yet to be resolved, *the circuit court has entered a final judgment on the breach of fiduciary duty claims.*

Under CR 54.02, where a case involves multiple claims, the circuit court is permitted to "grant a final judgment as to fewer than all the claims, and hence to make possible an immediate appeal, upon a determination that there is no just reason for delay." *Shawnee Telecom Res., Inc. v. Brown*, 354 S.W.3d 542, 549 (Ky. 2011) (citing *Watson v. Best Fin. Servs., Inc.*, 245 S.W.3d 722 (Ky. 2008)). "Where the judgment truly disposes of a distinct and separable aspect of the litigation, the trial court's determination that there is no just reason for delay will only be disturbed if that discretion was abused." *Id.*

In the case at bar, the circuit court under CR 54.02 entered a final judgment on Respondents' breach of fiduciary duty claims. The circuit court was empowered to enter a valid final judgment on the breach of fiduciary duty claims despite the fact that *there were other collateral claims outstanding.* The circuit court's order did not concern those issues and they remain to be adjudicated. Rather, the circuit court by entering a final judgment under CR 54.02, permitted the judgment on the central issue to be appealed to avoid unnecessary delay. As such, *there was a final judgment regarding the breach of fiduciary duty claims upon the entry of the circuit court's October 22, 2014, order.* *Chesley III*, 503 S.W.3d at 153 (emphasis added).

Unfortunately, the Supreme Court makes no direct reference to the unresolved punitive damages claim lingering in the circuit court, nor does the opinion even include the word "punitive" or reference the punitive damages statute, KRS 411.186. Taking advantage of these omissions, Chesley suggests that the issue was more fully briefed and more directly before this Court in the instant appeal.[7] He implies that, because both the Court of Appeals order and the Supreme Court order in *Chesley III*, focused on "the characterization of the circuit court's June 23, 2015 order" as not being a temporary injunction, *id.* at *4, it would not be inconsistent for this Court to focus on the characterization of the partial summary judgment, to rule that it was interlocutory because it did not resolve the entirety of a claim, and that it could not be made a final judgment, even with finality recitations.

■ Tempted though we may be to do nothing more than rely on *Chesley III*'s reference to the nature of the partial summary judgment as a final judgment, we have examined the issue independently. Focusing on the nature of the unresolved punitive damages claim vis-à-vis the judgment on appeal, we still reach the conclusion that the October 22, 2014 order is final and appealable and not interlocutory.

7. Chesley took this position in response to the Appellees' motion before this Court to cite

*Chesley III* as additional authority.

The key question is whether that order "truly disposes of a distinct and separable aspect of the litigation[.]" *Id.* at *4. Chesley argues that it does not and urges us to consider certain federal cases interpreting Federal Rule of Civil Procedure 54(b). That is perfectly appropriate because our Supreme Court said "CR 54.02 is substantively equivalent to Federal Rules of Civil Procedure (FRCP) 54(b) [and, therefore, f]ederal case law is instructive on the purpose of the rule." *Watson v. Best Financial Services, Inc.*, 245 S.W.3d 722, 725 (Ky. 2008). However, while appropriate, his authority is not persuasive.

For example, he cites *Sussex Drug Products v. Kanasco, Ltd.*, 920 F.2d 1150 (3d Cir. 1990) to support his argument that "[w]hen liability rests on the same transaction or series of transactions, a count for punitive damages, although of a different order than compensatory damages, does not constitute a separate claim . . . ." *Id.* at 1155. But *Sussex Drug Products* should be cited for the point with which the Third Circuit began its analysis:

> After extensive surveys of case law, leading commentators agree that uncertainty is the rule: "The line between deciding one of several claims and deciding only part of a single claim is sometimes very obscure." 10 C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure* § 2657, at 60–61 (2d ed. 1983); 6 J. Moore, W. Taggart & J.

Wickers, *Moore's Federal Practice* ¶ 54.33 [2], at 54–197 (1990) ("With the doctrine thus in ferment it is difficult to state any reliable litmus for identifying a distinct 'claim for relief.' "). Our Court has acknowledged the lack of consensus. In *Allegheny County Sanitary Auth. v. EPA*, 732 F.2d 1167, 1172 (3d Cir.1984), we observed that "[t]here is no definitive test to determine whether more than one claim is before the court." Similarly, *RePass v. Vreeland*, 357 F.2d 801, 805 (3d Cir.1966), noted the "difficulty of providing simple criteria to resolve this onerous problem."

*Id.* at 1154; *see also* Andrew S. Pollis, *Civil Rule 54(B): Seventy–Five and Ready for Retirement*, 65 Fla. L. Rev. 711 (2013) ("the Rule has spawned seventy-five years of chaos").

■ Clearly, there are jurisprudential differences among the state and federal courts that make resolution of this "onerous problem" somewhat jurisdictionally idiosyncratic. Unlike the view of the federal courts and the state courts that follow them,[8] Kentucky *does* consider punitive damages a separate claim and not merely an additional remedy along with compensatory damages. *See Chicago, R.I. & P. Ry. Co. v. Schwyhart*, 227 U.S. 184, 193, 33 S.Ct. 250, 251, 57 L.Ed. 473 (1913) (whether "cause of action was stated . . . is a question of state law").

■ In Kentucky, a claim for punitive damages, although interrelated,[9] is a sepa-

---

**8.** For example, Chesley cites the Kansas Supreme Court case of *Wilkinson v. Shoney's, Inc.* The opinion expressly says "[w]e follow the federal cases interpreting 54(b) certifications." 265 Kan. 141, 143, 958 P.2d 1157, 1159 (1998). In fact, *Wilkinson* specifically relies on *Sussex Drug Products. Wilkinson*, 958 P.2d at 1161. He cites California as another such state; however, in California "[p]unitive damages are merely incident to a cause of action, and can never constitute the basis [of a claim in its own right]." *Hilliard v. A. H. Robins Co.*, 148 Cal.App.3d 374, 391, 196 Cal.Rptr. 117, 127 (Ct. App. 1983) (cita-

tion and internal quotation marks omitted). Similarly, Chesley cites the Alabama case of *Horn v. Brown* which concluded "there is no such thing as a 'claim of punitive damages.' " 4 So.3d 1106, 1109 (Ala. 2008) (citation omitted).

**9.** "There is always an underlying interrelatedness of the claims between the parties in a multiparty civil action . . . . However, this interrelatedness cannot, in itself, 'inextricably intertwine' the claims so as to preclude appellate review; otherwise, every multiparty case (and virtually every multiclaim case) would

rate claim that is extricable from a breach of fiduciary duty judgment and vice versa. In *MV Transp., Inc. v. Allgeier*, our Supreme Court treated a "claim of punitive damages" independently of and extricable from its related claim for compensatory damages. 433 S.W.3d 324, 327 (Ky. 2014). In *Allgeier*, following a circuit court's dismissal of a punitive damages claim, the Supreme Court ruled "that the trial court improperly granted summary judgment dismissing Allgeier's *claim of punitive damages*." *Id.* at 339 (emphasis added). The Court said the proper remedy was to remand the case for a trial on punitive damages only, stating that "we cannot conclude that issues of ... punitive damages are so inextricably interwoven with the issues of general liability and compensatory damages such that a retrial solely on punitive damages would be unjust." *Id.* at 341. Furthermore, *Allgeier* also refers to the punitive damages statute that expressly identifies punitive damages as a separate "claim." KRS 411.186(1) ("In any civil action where *claims for punitive damages* are included ....").

Candidly, *Allgeier* also quotes the rest of the statute which says "the jury or judge if jury trial has been waived, shall determine concurrently with all other issues presented, whether punitive damages may be assessed." *Id.* But that language does not undermine our conclusion that, for purposes of CR 54.02, the judgment on the claim for compensatory damages can be extricated from the punitive damages claim. Again, we rely on our own Supreme Court's view.

The Supreme Court interprets the language of the statute merely as "provid[ing] that, in the initial trial, the jury will consider punitive damages at the same time it considers the verdicts of liability and compensatory damages claims, rather than, for

example, in a separate punitive damages phase." *Allgeier*, 433 S.W.3d at 340. This means only that the related claims should be heard together by the same jury, rather than in separate phases. This is similar to the intent of KRS 532.055 governing "[v]erdicts and sentencing by jury in felony cases" which requires in criminal cases that "the guilt phase and punishment phase follow in close proximity of time and are both heard by the same jury." *Boone v. Commonwealth*, 821 S.W.2d 813, 814 (Ky. 1992).

Notably, the Supreme Court "held that KRS 532.055 was 'a legislative attempt to invade the rule making prerogative of the Supreme Court by legislatively prescribing rules of practice and procedure [and therefore] it violate[d] the separation of powers doctrine enunciated in Section 28 of the Kentucky Constitution.'" *Jackson v. Commonwealth*, 481 S.W.3d 794, 799 (Ky. 2016) (quoting *Commonwealth v. Reneer*, 734 S.W.2d 794, 796 (Ky. 1987)). The same could be said of KRS 411.186(1).

It is difficult to argue that it is not a rule of practice or procedure to require a judge or jury to "determine concurrently with all other issues presented, whether punitive damages may be assessed." KRS 411.186(1). And, this rule was imposed upon our courts by the legislature. If KRS 411.186(1) is a rule of procedure, it was enacted contrary to the exclusive, constitutional grant of procedural rule-making power to the Supreme Court. Ky. Const. 116 ("The Supreme Court shall have the power to prescribe ... rules of practice and procedure for the Court of Justice."). In fact, the statute directly conflicts with the Supreme Court's procedural rule, codified as CR 42.02, that a trial court "*shall order a separate trial* of any claim, cross-claim, counterclaim, or third-party claim,

elude the entry of a [CR 54.02] judgment, and [that] rule ... would be meaningless." *Ginett*

*v. Computer Task Group, Inc.*, 962 F.2d 1085, 1095–96 (2d Cir. 1992).

or *of any separate issue* or of any number of claims, cross-claims, counterclaims, third-party claims or issues" upon finding "that separate trials will be in furtherance of convenience or will avoid prejudice, or will be conducive to expedition and economy[.]" CR 42.02(1) (emphasis added).

■ But, "a statute carries with it the presumption of constitutionality [and] we are *obligated* to give it, if possible, an interpretation which upholds its constitutional validity." *Caneyville Volunteer Fire Dept. v. Green's Motorcycle Salvage, Inc.*, 286 S.W.3d 790, 806 (Ky. 2009) (citations and internal quotation marks omitted). Fortunately, the statute can be read as consistent, not conflicting, with our jurisprudence and our interpretation of the law and facts of this case.

. For this case, what is important about the statute is that it treats punitive damages as a "claim." That is consistent with *Chesley III* and *Allgeier*. It supports our conclusion that the Appellees' prayer for punitive damages is not so tethered to the interrelated fiduciary breach and compensatory damages claim that it prevents its independent adjudication as an interlocutory judgment. In turn, that interlocutory judgment qualifies for application of CR 54.02 to convert it to a final and appealable judgment. *Hale v. Deaton*, 528 S.W.2d 719, 722 (Ky. 1975) ("Before the processes of CR 54.02 may be invoked [to make] an otherwise interlocutory judgment final and appealable, there must be a final adjudication upon one or more of the claims in litigation.").

Therefore, we conclude the circuit court did not abuse its discretion when it invoked CR 54.02 to make the October 22, 2014 order a final and appealable judgment. Exercise of our appellate jurisdiction is proper.

### *Issue Preclusion*

. Chesley next takes issue with the circuit court's grant of summary judgment on Appellees' breach of fiduciary duty claim based upon issue preclusion. Chesley argues that issue preclusion does not apply because the issues presented in the disciplinary proceeding differ from those in this action, and thus, not all of the requirements of the doctrine barring litigation are met. He further asserts he did not have a full and fair opportunity to litigate the issue before the KBA Trial Commissioner.

■ Appellees in this case used the doctrine offensively in the circuit court. Offensive issue preclusion is used "to prevent a defendant from relitigating issues resolved in the earlier proceeding." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979). In order for a party to successfully assert the doctrine, he must establish the following elements: "(1) identity of issues; (2) a final decision or judgment on the merits; (3) a necessary issue with the estopped party given a full and fair opportunity to litigate; (4) a prior losing litigant." *Moore v. Commonwealth*, 954 S.W.2d 317, 319 (Ky. 1997) (citing *Sedley v. City of West Buechel*, 461 S.W.2d 556, 559 (Ky. 1970)). The fact that Appellees were not parties to the disciplinary action does not preclude them from invoking the doctrine of issue preclusion against Chesley, provided the four elements are met. *See Board of Education of Covington v. Gray*, 806 S.W.2d 400, 402 (Ky. App. 1991).

■ Chesley argues that the first element is not met because the various issues resolved in the disciplinary proceeding are not identical to those in this lawsuit. He contends the purpose served by disciplinary proceedings is inherently different than that of an action seeking to impose civil liability.

■ Chesley points out, and we acknowledge generally, that our Rules of Professional Conduct "are not designed to

be a basis for civil liability." Supreme Court Rule (SCR) 3.130 (Preamble XXI). Additionally, we recognize that "[v]iolation of a Rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached." *Id.*; *Rose v. Winters, Yonker & Rousselle, P.S.C.*, 391 S.W.3d 871, 873 (Ky. App. 2012) (citing *Hill v. Willmott*, 561 S.W.2d 331, 333–34 (Ky. App. 1978) (noting that the Rules of Professional Conduct do not create a private cause of action)).

Nevertheless, the Preamble describing the scope of the Rules expressly provides that "a lawyer's violation of Rule may be *evidence of breach* of the applicable standard of conduct." SCR 3.130 (Preamble XXI) (emphasis added). Furthermore, the Rules do provide guidance and establish the minimum standard of conduct expected of all attorneys. In this instance, the Rules establish the standard of conduct required of an attorney acting as his clients' fiduciary. The same facts of the disciplinary proceeding were presented to the Boone Circuit Court. In the context of those facts, the issue of Chesley's adherence, or nonadherence, to the standard was resolved to the satisfaction of what can only be referred to as a tribunal comprised of his professional peers. And, that resolution had the benefit of review by a higher court than the circuit court or this Court.

In the disciplinary proceeding, Chesley was found guilty of violating eight Rules of Professional Conduct. In its opinion, the Supreme Court addressed issues regarding Chesley's fee, his failure to comply with the fee splitting agreement, various misrepresentations made by Chesley to the court and third parties, Chesley's dishonest behavior, and his knowledge and concealment of the dishonest behavior of his co-counsel.

For purposes of an issue preclusion analysis, we must compare the two adjudications to determine if they involve the same controversy. "The key inquiry in deciding whether the lawsuits concern the same controversy is whether they both arise from the same transactional nucleus of facts." *Yeoman v. Commonwealth, Health Policy Bd.*, 983 S.W.2d 459, 465 (Ky. 1998). That was the inquiry undertaken by the Boone Circuit Court. It found the facts and circumstances before it in the summary judgment motion to be identical to those at issue and ultimately decided by the Supreme Court in the disciplinary proceeding—*i.e.*, Chesley's role in the *Guard* settlement.

In 2007, prior to the KBA matter, when the circuit court denied summary judgment as to Chesley, it concluded that Chesley received more than that to which he was entitled, and that he would ultimately be responsible for some repayment to Appellees; however, certain factual disputes remained as to him. (R. 3471). The Supreme Court questioned "[w]hether the differences [would] prove to be material" once those disputes were "determined as the case against him proceed[ed] in the trial court." *Chesley I*, 413 S.W.3d at 605.

Once back in that trial court, Chesley maintained that he did not have an attorney-client relationship with any of the individual plaintiffs because he had no contact or correspondence with any of them. (R. 2915–16). He claimed he was hired by attorneys Mills, Cunningham, and Gallion for the sole purpose of negotiating a settlement for the Fen–Phen class action, and that he succeeded in his role. (R. 2916). Chesley further asserted that because the case was settled as a class action, the fee contracts were irrelevant because the court determines the legal fees in a class action. (*Id.*). Chesley claimed he was unaware of the other attorneys' fee agreements with the Appellees. (*Id.*). And lastly, Chesley pointed out that the settlement

agreement provided that it was a settlement for individuals represented by the settling attorneys; he did not sign the settlement agreement as a "settling attorney." (*Id.*). These very same arguments were asserted by Chesley before the Supreme Court in the disciplinary action, and the Supreme Court rejected each one. The Boone Circuit Court justifiably turned to the Supreme Court's resolution of these issues in deciding the case pending before it on the summary judgment motion. We summarize those decisions here.

It is undisputed that no client was given notice of the fee splitting agreement, and no client was informed of Chesley's participation in the *Guard* case. But in response to his assertion that he had no responsibility or contractual obligation to the individual clients because he was hired by the three other attorneys to negotiate the settlement, the Supreme Court provided:

> However, [Chesley] was a signatory to a fee splitting agreement, which stated that *all* clients were to receive notice of the fee splitting agreement and that *all* of the attorneys are to be "identified as co-counsel in the class action styled *Guard v. American Home Products* in Boone Circuit Court in Kentucky." The plain language of the agreement rebuts [Chesley's] argument that he assumed no responsibility to inform the clients he had undertaken to represent.... Each attorney had an independent duty to see that the clients received the required notice. It is not enough to assume without inquiring that someone else did it. Moreover, had [Chesley] chosen to exercise his responsibility and determine if the clients were being properly notified, he may have been able to prevent the violations that were later uncovered by Mills' and Gallion's law partners.

*Chesley II*, 393 S.W.3d at 596–97. The Supreme Court simply did not accept that he did not represent the *Guard* case plaintiffs.

Chesley also argued that his fee was not subject to the contingency fee contracts of his co-counsel because he was not a party to those contracts and because the case was settled as a class action. The Supreme Court had a different view, holding that:

> [Chesley] cannot claim that the reasonableness of his fee should be based upon class action standards when he himself negotiated the agreement that required the decertification of the class action and the dismissal without any compensation of all pending claims, except those with fee contracts. The fact is that [Chesley] did not obtain the settlement of a class action; he secured the dismissal of the class action and the settlement of some 431 individual claims that were subject to contingent fee contracts.
>
> When [Chesley] sought the judge's approval for an attorney's fee, the class action was long-since dismissed.

*Id.* at 595.

The Supreme Court also specifically stated that Chesley's argument that he was hired by the fellow attorneys for the sole purpose of negotiating a settlement of the case and nothing further was "simply unavailing." *Id.* at 597. The Supreme Court also acknowledged that Chesley did not sign the settlement document with American Home as a "settling attorney," but nonetheless, concluded that Chesley could not escape the fact that he agreed to be co-counsel representing the plaintiffs and shared in the responsibility of notifying the clients about the aggregate settlement reached, the dismissal of the cases, and the decertification of the class action. Appellees received no such notice.

When Chesley responded to the Appellees' 2014 motion for summary judgment, he made the same arguments. Nothing new or different was presented in his de-

fense. However, the Appellees had pointed out that the unanswered questions Chesley believed were issues of fact, were actually resolved by the Supreme Court as matters of law. The trial court simply followed the Supreme Court's decision in applying law to uncontroverted facts and decided summary judgment in favor of the Appellees.

The disbarment decision leaves no doubt as to Chesley's role in the *Guard* case. The Court stated:

> [Chesley] argues that he had no duty to the individual clients, because he was hired by none of them and had no knowledge of their fee agreements with Mills, Gallion, and Cunningham. We do not accept ignorance is an excuse nor do we find it credible that [Chesley] was unaware of the fee arrangement. When he entered into his agreement with the other attorneys, [Chesley] signed on as co-counsel with Mills, Cunningham, and Gallion, and he was one of the lawyers "representing the plaintiffs in the litigation pending or anticipated against [American Home Products] ...," as stated in the fee-division agreement. The plaintiffs in the case were his clients, and he assumed the same ethical responsibilities that he would have with any other clients. He had the duty to know his fee responsibilities to them.
>
> . . . .
>
> If he was ignorant of the means by which his fee was being paid, he had a duty to the clients to find out. His later effort to obtain the court's retroactive approval of his fees demonstrates his knowledge that the earlier payments were improperly disbursed to him. The fee for [Chesley's] work on behalf of the *Guard* clients was governed by fee contracts, and the attorneys' agreement. At most he was entitled to 21% of one-

third[ ] of the $200,450,000.00 recovered, or $14,031,500.00.

*Id.* at 595–96.

The first element of issue preclusion—identity of issues—has been satisfied.

██ Chesley next contends that the third element of issue preclusion is not met—that he did not have a full and fair opportunity to litigate the issues before the KBA Trial Commissioner. We do not agree.

Chesley's hearing before the Trial Commissioner was held on several days on November 5–6 and 12–13, 2009 before Judge Rod Messer and continued on September 13–15, and 20–24, 2010 before Judge William Graham. Evidence was provided prior to the hearing, including the testimony of five out-of-state witnesses and 44 exhibits. Through the course of the hearings, 43 witnesses gave their testimony, and Chesley was provided the opportunity to question those witnesses. Additionally, the Trial Commissioner considered 124 exhibits. The Trial Commissioner also provided the parties the opportunity to submit briefs after the conclusion of the hearings.

Chesley asserts that the circuit court based its conclusion that he had a full and fair opportunity to litigate the issues in the disciplinary proceedings only on the number of exhibits admitted and the number of witnesses that testified. He claims a denial of a full and fair opportunity to be heard on a limited ability to engage in discovery.

After issuing summary judgments in 2007, the circuit court issued a stay that precluded further discovery during the pendency of the appeals. In 2012, while his disciplinary action was pending before the Supreme Court, Chesley moved the circuit court to lift the stay. He suspected KBA counsel prosecuting the disciplinary matter had a conflict of interest and wanted to use

the civil litigation as a vehicle to pursue that issue.

In its order denying Chesley's motion, the circuit court pointed out that "[u]ntil Mr. Chesley's motion to lift the 'discovery stay' the Defendants including Mr. Chesley were not interested in a trial until the appeal was finalized." (R. 5588). Overall, the trial court concluded that Chesley's inability to engage in discovery in the civil action would not hinder his ability to present his defense before the KBA Trial Commissioner and the Board.

Given the extensive proceedings, Chesley's full participation in those proceedings, the considerable amount of evidence put before the Trial Commissioner, as well as the fact that Chesley was aware he was facing permanent disbarment, we agree with the circuit court that "Chesley had a realistically full and fair opportunity to present his case before the Trial Commissioner." (R. 6169).

■■■■■ Technical but inconsequential aspects of the rule notwithstanding, general considerations of fairness lead us to conclude that application of issue preclusion was appropriate in this case. *Waddell v. Stevenson*, 683 S.W.2d 955, 959 (Ky. App. 1984); *BTC Leasing, Inc. v. Martin*, 685 S.W.2d 191, 197 (Ky. App. 1984) (The

doctrine of issue preclusion is based on rules of justice and fairness.). In the application of issue preclusion, justice is "best served on a case-by-case basis as opposed to an automatic imposition of a doctrine." *Revenue Cabinet, Commonwealth of Ky. v. Samani*, 757 S.W.2d 199, 202 (Ky. App. 1988). The doctrine "has the dual purpose of protecting litigants from the burden of relitigating an identical issue ... and of promoting judicial economy by preventing needless litigation." *Parklane*, 439 U.S. at 326, 99 S.Ct. at 649, 58 L.Ed.2d (1979) (citing *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 328–329, 91 S.Ct. 1434, 1442, 28 L.Ed.2d 788 (1971)). In this instance, we believe limiting relitigation of the issues can be achieved without compromising fairness to any of the parties involved.[10]

In sum, we are persuaded that the elements of issue preclusion are satisfied. All of the issues in the present action were litigated and necessary to the Supreme Court's ultimate decision to disbar Chesley based upon his relationship with Appellees and his conduct throughout the settlement disbursement. The decision constitutes a final decision on the merits, and the resulting disbarment unquestionably labels Chesley as the losing party. We agree with

---

**10.** A trial court's application of issue preclusion based on a KBA decision is not an infrequent occurrence. "In disciplinary proceedings, a judgment of a court is considered conclusive proof that the alleged conduct occurred." *Kentucky Bar Ass'n v. Horn*, 4 S.W.3d 135, 137 (Ky. 1999) (Felony conviction of offense involving fraud, deceit, and misrepresentation served as conclusive proof that attorney engaged in the criminal conduct alleged in the indictment against him.); *Kentucky Bar Ass'n v. Schilling*, 361 S.W.3d 304, 310 (Ky. 2012) (Sixth Circuit judgment conclusively established attorney had engaged in activities that violate Rules of Professional Conduct.). Similarly, "[d]ecisions of administrative agencies acting in a judicial capacity are entitled to the same res judicata effect as

judgments of a court." *Kentucky Bar Ass'n v. Harris*, 269 S.W.3d 414, 418 (Ky. 2008) (citations omitted) (findings of fact by Personnel Board that the attorney, a former Commonwealth employee, had presented false time records to her employer, could be accepted by the Trial Commissioner and by the Board of Governors of the Kentucky Bar Association on *de novo* consideration). The Sixth Circuit found the Kentucky Supreme Court's order disbarring an attorney from the practice of law for engaging in dishonest misconduct provided a sufficient basis for precluding malpractice insurance coverage under the policy's dishonesty exclusion clause. *Continental Cas. Co. v. Law Offices of Melbourne Mills, Jr., PLLC*, 676 F.3d 534, 542 (6th Cir. 2012).

the circuit court that the decision from our Supreme Court in the disciplinary matter conclusively established certain material facts regarding Chesley's conduct and operates preclusively in the civil proceeding. Therefore, summary judgment for Appellees was appropriate because no genuine issues of material fact remained regarding Chesley's role in the *Guard* case settlement.

### Joint and Several Liability

█ Independently of his argument that issue preclusion does not apply, Chesley argues he should not be held jointly and severally liable with his co-defendants. He asserts that the circuit court erred in its joint and several liability determination because Appellees' action against him sounds in tort and falls within the requirements of KRS 411.182.[11] His argument is based upon his insistence that he was not contractually obligated to any of the individual plaintiffs of the *Guard* case. As we have previously discussed, Chesley is bound by the Supreme Court's determination that when he signed the agreement with the other attorneys, he signed as co-counsel, and the *Guard* plaintiffs became his clients. Appellees' claim is based upon breach of the attorneys' contracts, to which KRS 411.182 does not apply. Therefore, this argument must fail.

Chesley further argues that joint and several liability is inappropriate in this case because the Supreme Court declined to extend it to him in its opinion rendered in the case against his co-counsel. Chesley states that the Supreme Court had the benefit of the disbarment order at the time. However, in that same opinion ruling against Chesley's co-counsel, the Court declined to review the denial of the summary judgment motion against Chesley because it was interlocutory. Chesley's liability, joint and several or otherwise, was not

then at issue, and the Court properly declined to address it. Thus, we find no merit in this argument.

The circuit court determined that Chesley's joint and several liability with his co-defendants was proper because he had knowingly participated in a scheme with his co-counsel. The Supreme Court found:

The vast amount of evidence compiled and presented in this matter demonstrates convincingly that [Chesley] knowingly participated in a scheme to skim millions of dollars in excess attorney's fees from unknowing clients. He may have kept himself at arm's length from Mills, Cunningham, and Gallion; and he may not have known the details of the direct deception that, with Helmers' assistance, they perpetrated upon the clients: But no reasonable person familiar with the evidence could doubt that he received and retained fees that he knew were improperly taken at the client's expense. No reasonable person familiar with the evidence could doubt he purposefully attempted to avoid conversation and correspondence that would expose his knowledge of the nefarious schemes of his co-counsel.

*Chesley II*, 393 S.W.3d at 599–600.

█ The essential elements of a joint enterprise include: (1) an agreement, expressed or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose among the members; and (4) and equal right to a voice in the direction of the enterprise. *Chesley I*, 413 S.W.3d at 603 (citing *Huff v. Rosenberg*, 496 S.W.2d 352 (Ky. 1973)).

Each of the attorneys, Gallion, Cunningham, Mills, and Chesley, entered into a

---

11. The statute requires that in tort actions, fault is to be apportioned among the individu-
al parties at fault and that damages be allocated severally among the tortfeasors.

written agreement for the common purpose of representing all of the plaintiffs in the Fen–Phen litigation. They each and all shared a common pecuniary interest in effective representation. There was agreement concerning how the work would be allocated and how the profits would be divided. Although he kept his distance, Chesley maintained a voice in the direction of the venture through his efforts to conceal his own misconduct and that of his co-counsel. We find no error in the circuit court's determination to hold Chesley jointly and severally liable with Gallion, Cunningham, and Mills for the damages the Appellees suffered.

### Prejudgment and Post–Judgment Interest

 Chesley further contends that the circuit court erred in awarding prejudgment interest against him. He maintains that Appellees are not entitled to prejudgment interest as a matter of right because their claim is unliquidated.

It has been the longstanding rule in the Commonwealth that "prejudgment interest is awarded as a matter of right on a liquidated demand and is a matter within the discretion of the trial court or jury on unliquidated demands." *3D Enterprises Contracting Corp. v. Louisville & Jefferson Cnty. Metro. Sewer Dist.*, 174 S.W.3d 440, 450 (Ky. 2005) (citing *Nucor Corp. v. General Elec. Co.*, 812 S.W.2d 136, 141 (Ky. 1991)). Generally, "liquidated" means "fixed by agreement of parties or by operation of law." *Nucor*, 812 S.W.2d at 141 (citing Black's Law Dictionary (6th ed. 1990)). A common example includes "an unpaid fixed contract price." *Id.*

 As we previously recognized, Appellees' claim is fundamentally contractual, based upon Chesley's breach of his contract to represent them in the Fen–Phen litigation. In determining whether a claim is liquidated or unliquidated, "one must look at the nature of the underlying *claim,*

not the final award." *3D Enterprises*, 174 S.W.3d at 450 (emphasis in original). Liquidated claims are "of such a nature that the amount is capable of ascertainment by mere computation, can be established with reasonable certainty, can be ascertained in accordance with fixed rules of evidence and known standards of value, or can be determined by reference to well-established market values." *Id.* (quoting 22 Am. Jur.2d DAMAGES § 469 (2004)). The agreements upon which Appellees' claim rests provide sufficient information such that mere computation could readily determine the amount of damages. Accordingly, Appellees' claim is liquidated.

Chesley alternatively contends that any prejudgment interest awarded against him should be limited to the excess fees he received and not the entire $42,000,000.00 judgment. However, our conclusion that Chesley is jointly and severally liable for the $42,000,000.00 effectively eliminates this argument. Until the principal amount of Chesley's joint and several liability is satisfied, he will be likewise jointly and severally liable for any unpaid pre- or post-judgment interest.

 Next, Chesley maintains that he should not be charged prejudgment interest for the portion of the $42,000,000.00 judgment Appellees have already collected. However, interest for breach of a contract to pay a certain sum is recoverable as compensatory damages suffered during the time the aggrieved party should have had the money, but did not. *Nucor*, 812 S.W.2d at 144. In this case, the amount was owed as soon as Chesley and his co-defendants took it. As explained in *Nucor*:

> Interest is charged not only because of the value to the one who uses money, but also as compensation to the one who has been deprived of the use of money. Interest is not recovered according to a rigid theory of compensation for money

withheld, but is given in response to considerations of fairness; it is denied when its exaction would be inequitable .... [T]he tendency of the courts is to charge and allow interest in accordance with the principles of equity, to accomplish justice in each particular case.

*Id.* at 143. Accordingly, we find no error.

 We likewise disagree with Chesley's assertion that the circuit court erred in its award of post-judgment interest on the $42,000,000.00 pursuant to KRS 360.040. The statute grants the prevailing party the right to recover post-judgment interest on a judgment at "twelve percent (12%) interest compounded annually from its date." KRS 360.040. "If there are no factors making it inequitable to require interest, it will be allowed, ... and the interest must be at the rate set out in the statute." *Courtenay v. Wilhoit*, 655 S.W.2d 41, 42 (Ky. App. 1983). The award of post-judgment interest in this case serves "the general purpose ... 'to compensate a plaintiff for the loss of use of money resulting from the defendant's failure to pay after the extent of its obligation has been fixed by a judgment." *Stone v. Kentucky Ins. Guar. Ass'n*, 908 S.W.2d 675, 678–79 (Ky. App. 1995).

Again, we find no error.

### *Uncertainty of Judgment*

 Chesley's final argument was originally the basis for his post-judgment challenges, including his CR 60.02 motion which the circuit court denied, and which is the subject of the third of these consolidated appeals. He argues the circuit court's second amended judgment is void for uncertainty as to the identities of the judgment creditors and the amount of damages awarded to each. We are not persuaded because when the judgment is read in connection with the pleadings and the record, the identities of the plaintiffs are ascertainable. *Reed v. Runyan*, 226 Ky. 261, 10 S.W.2d 824, 825 (1928).

In *Oglesby v. Prudential Insurance Company of America*, the Court held "that the pleadings in the cause may be looked to in aid of the judgment, and that the certainty of the latter may be obtained from consulting preceding parts of the record containing the necessary data therefor." 259 Ky. 620, 82 S.W.2d 824, 826, (1935). In a case such as this, initially filed as a class action, but which efficiently refers to "plaintiffs" without naming them individually, it can safely be presumed that the record discloses their individual names. *See id.* Appellees filed a summary of misappropriated settlement funds and attorneys' fees in 2007 when they obtained summary judgment against Gallion, Cunningham, and Mills. The same settlement fund analysis was attached to their 2014 reply to Chesley's response to their motion for summary judgment, and neatly and plainly lists the individuals in the action. "No injustice can be done, because, if questioned, certainty can be reached as to those in whose favor the judgment was rendered by reference to the papers of the suit." *Stevenson v. Flournoy*, 89 Ky. 561, 13 S.W. 210, 211 (1890). Thus, Chesley's argument is without merit.

### IV. Conclusion

For the foregoing reasons, we affirm the circuit court's September 19, 2014 summary judgment, as amended by the October 22, 2014 summary judgment. We also affirm the circuit court's November 24, 2014 order denying CR 60.02 relief.

ALL CONCUR.